## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

KEVIN D. MILLER,                    )
                                    )
Plaintiff,                          )
                                    )
vs.                                 )    NO. 1:07-CV-231
                                    )
ACCOUNT MANAGEMENT                  )
SERVICES, *et al.*                  )
                                    )
Defendants.                         )

### DEFAULT JUDGMENT ORDER

This matter is before the Court on the Third Motion for Default Judgment Against Asset Partners of Western New York, LLC (formerly Account Management Services, LLC) and Request for Hearing on Damages, filed by Plaintiff, Kevin Miller, on January 30, 2009 (DE #155).  For the reasons set forth below, the motion is hereby **GRANTED**.  The Court **ORDERS** that default judgment be entered in favor of Plaintiff and against Defendant, Asset Partners of Western New York, LLC (formerly Account Management Services, LLC), as follows: (1) statutory damages of $1,000; (2) costs of $595; and post-judgment interest at a rate of 0.59% to Plaintiff.

BACKGROUND

On September 10, 2007, Plaintiff, Kevin D. Miller, filed his pro se complaint against several defendants, including a defendant

named as "Account Management Services, currently doing business as Asset Partners of Western New York, LLC" (hereinafter "Asset Partners"). Miller alleges that Asset Partners obtained his personal credit information without his permission, and without a permissible purpose, in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681. (First Am. Compl., ¶¶ 14-16, 49.) Moreover, he alleges that his consumer reports contain confidential and personal financial account information, and that he "values his privacy interests highly." (First Am. Compl. ¶ 13.)

On October 11, 2007, Miller sought his first entry of default (DE #22) and default judgment (DE #24) against Asset Partners, but was denied on October 17, 2007, because the motion was premature (DE #25). Asset Partners was subsequently served on January 7, 2008 (DE ## 57, 58), but no one has appeared on behalf of Asset Partners, and Asset Partners has not filed an answer.[1]

On March 19, 2008, Miller sought a second entry of default and default judgment against Asset Partners (DE ##66-67, 71), but was denied by this Court in an order dated July 22, 2008, because this Court found that although Asset Partners had not filed an answer, it had otherwise been defending the case. (DE #97.) The Court

---

[1]The Court notes that Miller filed an amended complaint on June 24, 2008, again naming Asset Partners as a defendant. (DE #83). However, because the amended complaint advanced no new or additional claims for relief against Asset Partners, Miller was not required to issue a new summons to them under Federal Rule of Civil Procedure 5(a)(2).

made this determination from the fact that Account Management Services, LLC, a New York limited liability company, had filed a motion for failure to dismiss, or in the alternative, for summary judgment. (July 22, 2008 Order, p. 3.) However, as later revealed at a hearing held on August 19, 2008, that motion to dismiss was filed by Attorney Holly Brady on behalf of a different entity (*see* Docket #59), not Asset Partners. Ms. Brady clarified that she did not represent Asset Partners, but rather Account Management Services, LLC, a New York limited liability company, and Account Management Services of North America, LLC, which are separate entities. (DE #109). Therefore, contrary to the statement made by this Court in its previous order, Asset Partners has not appeared or otherwise defended against Miller's cause of action.

In an opinion dated September 25, 2008, Magistrate Judge Roger B. Cosbey ordered Asset Partners to obtain counsel. (DE #134.) Magistrate Cosbey also ordered Asset Partners to file an answer signed by counsel within twenty days of that order, and warned that "[f]ailure to comply with this Order may result in the entry of a default and entry of a default judgment." (*Id.*, p. 2.) To date, Asset Partners has not filed an answer, and has not obtained counsel.

In its March 10, 2009 order, this Court ordered Asset Partners to appear at a hearing for damages in front of the Court on March 23, 2009. Asset Partners failed to appear. At that hearing,

3

Miller orally presented his own testimony in support of his request for damages.


DISCUSSION

Federal Rule of Civil Procedure 55 governs the entry of default and default judgment.  When a defendant fails to answer a complaint or otherwise defend himself, the Clerk can make an entry of default.  Fed. R. Civ. P. 55(a); *see also Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980) ("Once a defendant fails to file a responsive answer, he is in default, and an entry of default may be made by either the clerk or the judge.").  Entry of default must precede an entry of default judgment.  *See, e.g., Hirsch v. Innovation Int'l*, No. 91 C 4130, 1992 WL 316143, at *1 (S.D.N.Y. Oct. 19, 1992).  In this case, the Clerk entered default against Asset Partners on February 4, 2009.  A district court may enter a default judgment against a party who "has failed to plead or otherwise defend" the case.  Fed. R. Civ. P. 55(a).

In a motion for default judgment, the well-pleaded allegations of a complaint relating to the amount of damages suffered must be proved.  *Yang v. Hardin,* 37 F.3d 282, 286 (7th Cir. 1994) (citing *United States v. DiMucci,* 879 F.2d 1488, 1497 (7th Cir. 1988)).  Before the entry of default judgment, Federal Rule of Civil Procedure 55(b)(2) provides that the district court "may conduct such hearings or order such references as it deems necessary and

4

proper" to determine the amount of damages.  Fed. R. Civ. P.
55(b)(2).  Such proceedings are required unless "the amount claimed
is liquidated or capable of ascertainment from definite figures
contained in the documentary evidence or in detailed affidavits."
*Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.,* 722 F.2d
1319, 1323 (7th Cir. 1983).  This Court held such a hearing on
March 23, 2009, at which Miller was in attendance.

Miller requests $50,000 in actual damages, $500,000 in
punitive damages to deter future conduct, and $595 in costs.  The
FCRA provides that any person who was merely negligent in violating
15 U.S.C. section 1681 is liable for: actual damages sustained by
the consumer as a result of the failure; and the costs of the
action together with reasonable attorney's fees.  15 U.S.C. §
1681o.  If the defendant acted with willful or reckless failure in
violation of section 1681n, it is liable for: actual damages
sustained by the consumer as a result of the failure or damages of
not less than $100 and not more than $1,000; (2) punitive damages
as the court allows; and (3) costs of the action together with
reasonable attorney's fees.  15 U.S.C. § 1681n.  In his complaint,
Miller does allege that Asset Partners willfully violated the FCRA.
(First Am. Compl. ¶¶ 49-50.)

Miller presented scant evidence to support his request for
damages.  According to an affidavit submitted in another case by
the accounts receivable manager for Asset Partners, Asset Partners

was assigned Miller's credit account on July 21, 2004. (Ex. 1 to First Am. Compl.) However, the consumer report provided by Experian indicates that Asset Partners obtained Miller's credit information on April 19, 2004, three months before it was actually assigned to Asset Partners. Miller argued at the hearing that he deserves damages for the invasion of privacy because he values his privacy, and the main purpose of the FRCA is to protect consumer's privacy interests and to ensure the proper utilization of consumer report information. He also implied that because punitive damages are available for a willful violation of the statute (15 U.S.C. § 1681n(a)(2)), he should automatically be awarded some amount of punitive damages.

To the contrary, Miller must show that he suffered damages as a result of Asset Partner's actions. *See Wantz v. Experian Info. Solutions*, 386 F.3d 829, 832 (7th Cir. 2004), abrogated on other grounds by *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007) ("It is the plaintiff's burden to establish that he is entitled to damages."). "Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages[.]'" *Crabill v. TransUnion, L.L.C.*, 259 F.3d 662, 664 (7th Cir. 2001). Miller did not put forth any evidence that he suffered any pecuniary damages or that he was denied credit because of Asset Partner's actions. As such, actual damages are not warranted.

6

Miller relies on *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001), for the proposition that FCRA cases are akin to invasion of privacy cases, where damages may be sought for emotional distress.  However, *Myers* dealt with reversing an order dismissing a FCRA action for lack of personal jurisdiction and improper venue, and it certainly does not hold that punitive damages are deserved for every willful violation of the FCRA. Rather, if FCRA damages are based on emotional distress, it must be based on something more than plaintiff's own conclusory allegations.  *See  Sarver v. Experian Info. Solutions*, 390 F.3d 969, 971 (7th Cir. 2004); *see also Centuori v. Experian Information Solutions, Inc.*, 431 F.Supp.2d 1002, 1010 (D. Ariz. 2006).  In this case, although Miller has alluded to arguing that damages should be available simply because his privacy was invaded, he has provided no proof whatsoever (not even his own testimony) of any emotional distress that he suffered as a consequence of Asset Partners obtaining his credit information.

Miller concedes that he does not know how his credit information was used by Asset Partners, and that it only pulled his consumer report once.  Moreover, Asset Partners had his credit information for only 3 months before it assumed Miller's debt. Based upon the limited evidence placed before this Court by Miller, the Court does not believe that punitive damages are warranted. *See Nitti v. Credit Bureau of Rochester*, 375 N.Y.S.2d 817, 821

7

(1975) (finding that in considering punitive damages, the Court should consider the remedial purpose of the chapter, harm to consumers, manner in which the agency conducted business with plaintiff, and the agency's income or net worth).  Miller has given the Court no information about Asset Partner's net worth, how it conducted business with consumers, or any emotional harm suffered by Miller (aside from the invasion of Miller's privacy).  As such, Miller has failed to show that he is entitled to punitive damages.

Because the allegations in Miller's complaint are taken as true at this stage of the proceedings, the Court will award $1,000, as provided by the statute.  *See Murray v. New Cingular Wireless Servs., Inc.*, 232 F.R.D. 295, 302-03 (N.D. Ill. 2005) (citations omitted) ("Statutory damages are an alternative remedy to actual damages, and a plaintiff cannot get both actual and statutory damages.  Consequently, a plaintiff does not have to prove actual injury or harm in order to get statutory damages."); *see also Buxton v. Equifax Credit Info. Servs., Inc.*, 02 C 6288, 2003 WL 22844245, at *5 (N.D. Ill. Dec. 1, 2003) (finding plaintiff suffered no harm and was not entitled to actual damages, but to receive statutory damages under the FCRA, "[t]he plaintiff must only show that the defendant 'knowingly and intentionally committed an act in conscious disregard for the rights' of the consumer.") (citation omitted).  Additionally, under the statute, Miller is entitled to costs of this litigation.

8

CONCLUSION

For the reasons set forth above, the motion for default judgment is hereby **GRANTED.** The Court **ORDERS** that default judgment be entered in favor of Plaintiff and against Defendant, Asset Partners of Western New York, LLC (formerly Account Management Services, LLC), as follows: (1) statutory damages of $1,000; (2) costs of $595.00; and post-judgment interest at a rate of 0.59% to Plaintiff.

**DATED: March 31, 2009**                         **/s/RUDY LOZANO, Judge**
                                                  **United States District Court**

9